SIMMONS MFG. CO. v. SOUTHERN SPRING BED CO. et al.

(Circuit Court, N. D. Georgia. May 30, 1904.)

1. PATENTS—INFRINGEMENT—SPRING BED.

The Gail patent, No. 639,222, for a spring bed and seat bottom, is not for a pioneer invention, nor does it show such novelty or improvement over the structures of the prior art as to entitle it to a broad construction, or anything beyond the precise structure shown and described. As so construed, *held* not infringed.

In Equity. Suit for infringement of letters patent No. 639,222 for a spring bed and seat bottom, granted to John F. Gail December 19, 1899. On final hearing.

Dyrenforth, Dyrenforth & Lee and Candler & Thompson, for complainant.

H. Smith and H. C. Peeples, for defendant Southern Spring Bed Co.

PARDEE, Circuit Judge. The case shows by proof and admission that all the elements entering into complainant's patented combination were old, and the combination itself appears to consist merely in bringing together the well-known spring and tie-rod of Mellon's patent of 1885, and the key rod and method of tying in McEntire's patent of 1881; and, so far as novelty of the claimed combination is concerned, the Patent Office might well have stood throughout upon the first decision of the examiner. The file wrapper shows that on the original presentation of Gail's application for patent, which presented some 17 different claims of combinations, the examiner decided as follows:

"Claims 1 to 10, inclusive, and 12, are rejected upon the patent to Mellon, No. 331,523, December 1, 1885, in connection with the patent to McEntire, No. 240,743, April 26, 1881, bed-bottoms of springs. The patent to Mellon shows the frame, springs and tie-rods having integral loops extending through two rings. The patent to McEntire shows a tie-rod having loops which connect adjacent springs, which is considered the equivalent of applicant's tie-rod, and a key-rod passing across the springs and through the loops of the tie-rod. There is believed to be no invention either in using the key-rod shown by Mc-

Entire with the tie-rods shown by Mellon; or in substituting the tie-rods shown by Mellon for the tie-rods shown by McEntire. It is considered immaterial whether the bead $C^2$ of applicant's loop passes through the ring of the adjacent spring from below or from above, but the patent to Bone, No. 582,895, May 18, 1897, bed-bottoms of springs, is cited to show a loop of this character passing through the ring of a spring from below, as claimed in certain of the claims.

"Claims 11, 13, 14, 15 and 16 are rejected upon Mellon, cited.

"Claim 17 is rejected upon the patents to Mellon and McEntire, cited, the bends, d, claimed therein, not conferring patentability thereon, being a common expedient and shown, for instance, in the patent to Laycock. No. 60,919, March 22, 1898, bed-bottoms of springs.      C. A. Mason, Examiner.

"Underwood."

The amendments made thereafter were in inserting the words "single parallel" before the word "tie-rods" in the first ten and last claims, the word "adjacent" in part of the claims erasing claims 11, 12, 13, 14, 15, and 16, and inserting in lieu thereof and to the same tenor newly worded claims 11, 12, 13, and 14; and on these amendments and some argument the Patent Office allowed the patent substantially as originally claimed.

In my opinion, the improvement that was made by Gail in complainant's patent was a matter of mechanical skill, within easy reach of any well-instructed mechanic who had before him the McEntire patent, 240,743, of April 26, 1881, wherein the method of tying tie-rod and spring is fully indicated in the illustration; the patent of Smith, 269,442, December 19, 1882, wherein the single tie-rod is fully indicated; and the patent of Mellon, 331,523, of 1885, wherein the single parallel tie-rod, V-shaped to connect adjacent springs with the upturned loop to grasp the adjacent spring, was fully shown; to say nothing of 25 or 30 other patents in relation to spring bed bottoms issued between 1881 and December 19, 1899, the date of complainant's patent.

The case, as presented, is one for infringement, and does not require that the validity of complainant's patent shall be passed upon, because the alleged infringing bed-bottom does not interfere with defendant's, unless it should be shown that complainant's patent is a pioneer patent, or such a broad patent that it should be construed to cover mechanical equivalents; and, after having gone carefully through the evidence in the case, and examined attentively the numerous prior patents—bed-bottoms, bed springs, and spring beds—wherein all sorts of springs, tie-rods, and key-rods, such as complainant uses, have been well known and used in the art, I conclude that the complainant has neither a pioneer patent, nor a patent showing such novelty or improvement that it is entitled to any broad construction; and, at best, a patent only for exactly what Gail put together, in the way he put it together. The defendants use a less complicated tie-rod and a more complicated spring than the complainant, and there is some evidence tending to show that their result is better, because the inside springs in their bed are more firmly locked in position than are the inside springs of complainant's bed—an advantage claimed as to durability and noise.

The very able and exhaustive briefs filed with me show no decided conflict between able counsel as to the law applicable when the facts

are ascertained, and therefore I have not found it necessary to cite authorities, but I notice that Singer Manufacturing Co. v. Cramer, 192 U. S. 265, 24 Sup. Ct. 291, 48 L. Ed. 437, published since this case was argued, seems to be full authority for the decision herein rendered.

A decree may be entered dismissing complainant's bill, with costs.